**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

|  |  |
|---|---|
| AOB PRODUCTS COMPANY, <br><br> PLAINTIFF, <br><br> v. <br><br> EPOSEIDON OUTDOOR ADVENTURE INC.; and KASTKING FISHING TACKLE, INC., <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
|  | **Case No. 4:26-cv-321** <br><br> **JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff AOB Products Company ("AOB" or "Plaintiff") makes this Complaint against Defendant Eposeidon Outdoor Adventure Inc. ("Eposeidon") and Defendant KastKing Fishing Tackle, Inc ("KastKing") (collectively "Defendants"), demands a jury trial, and alleges as follows:

**INTRODUCTION**

1.     AOB, and its predecessors-in-interest Battenfeld, have offered exceptional high-quality goods for outdoor and hunting enthusiasts for decades. AOB is a wholly owned subsidiary of American Outdoor Brands, Inc., a pre-eminent provider of outdoor sports, recreation and firearm-related products and accessories in the United States and throughout the world. American Outdoor Brands, Inc., through its predecessors-in-interest (including its most recent predecessor Smith & Wesson Inc.), has been well known in the field of hunting and shooting sports for decades.

2.     AOB produces innovative, top-quality products under its brands BOG®; BUBBA®; Caldwell®; Crimson Trace®; Frankford Arsenal®; Grilla Grills®; Hooyman®;

1

CORE/3510895.0851/241021794.1

Imperial®; Intellidropper®; LaserLyte®; Lockdown®; MEAT!; Your Maker®; Old Timer®; Schrade®; Tipton®; UncleHenry®; ust®; and Wheeler®.

3.     AOB's status as the market leader is due not only to the superior quality of its products and longevity of excellence but also because of its significant commitment to innovation.

4.     AOB conceives, designs, produces, sources, and sells products and accessories, including shooting supplies, rests, vaults, and other related accessories; reloading, gunsmithing, and firearm cleaning supplies; lifestyle products such as premium sportsman knives and tools for fishing and hunting; land management tools for hunting preparedness; harvesting products for post-hunt or post-fishing activities; electro-optical devices, including hunting optics, firearm aiming devices, flashlights, and laser grips; and survival, camping, and emergency preparedness products.

5.     AOB understands and values intellectual property rights and owns in excess of 320 patents and pending patent applications.

6.     AOB has 48 employees dedicated to research and development activities.

7.     In fiscal years 2023, 2024, and 2025 AOB's gross spending on research and development activities relating to the development of new products was $6.4 million, $6.9 million and $7.7 million

8.     One example of AOB's longstanding efforts to introduce new and inventive products for hunting and outdoor enthusiasts is the BUBBA® fillet knife multi-flex interchangeable set.

9.     Several years ago, an inventive new technology incorporated in the BUBBA® multi-flex interchangeable fillet knife products was developed at AOB. The BUBBA® multi-flex interchangeable fillet knife products provide an easy-to-use squeeze-and-slide mechanism

2

allowing you to switch between blades quickly and seamlessly while the Flex-Change® locking system keeps the blade safe and secure.

10.    On October 30, 2024, AOB's inventors filed a non-provisional U.S. patent application directed to innovative technology incorporated in the BUBBA® multi-flex interchangeable fillet knife products, U.S. Patent Application Publication US 2025/0050517, published February 13, 2025 (the "'517 Publication").

11.    The first patent was granted and issued on April 29, 2025 as U.S. Patent Number 12,285,879 (the "'879 Patent"). The '879 Patent is also referred to as one of the "Asserted Patents."

12.    Another patent was granted and issued on October 14, 2025 as U.S. Patent Number 12,441,011 (the "'011 Patent"). The '011 Patent is also referred to as one of the "Asserted Patents."

13.    A true and correct image of a BUBBA® multi-flex interchangeable fillet knife product, which is an embodiment covered by the Asserted Patents, appears below:



14.    The improvements and innovations embodied in the Asserted Patents are highly valuable and, until unlawfully copied by Defendants, served as key differentiating features to other products on the market.

3

15.    AOB is the current owner of the Asserted Patents and all associated rights of exclusivity. The exclusive position and innovation encompassed by the Asserted Patents continue to be an important asset for AOB.

16.    AOB's position is now threatened by Defendants' introduction of their infringing copycat products into the market.

17.    Defendants are now infringing the Asserted Patents with their "Accused Products" described below. The Accused Products include the "KastKing Interchangeable 3-Blade Fillet Knife Kit" and the "KastKing Interchangeable 4-Blade Fillet Knife Kit." True and correct images of the KastKing Interchangeable 3-Blade Fillet Knife Kit and the KastKing Interchangeable 4-Blade Fillet Knife Kit appear below:



CORE/3510895.0851/241021794.1

18.    Without the permission or authorization of AOB, Defendants have copied AOB's patented BUBBA® multi-flex interchangeable fillet knife products, and have begun to manufacture, distribute, and sell their infringing Accused Products.

19.    Upon information and belief, AOB has lost and is losing customers and has experienced incalculable erosion to its goodwill and reputation as a result of Defendants' infringing conduct described herein. If Defendants are allowed to continue marketing and promoting their Accused Products, then AOB will continue to suffer irreparable harm, including loss of sales, market share, profit and goodwill. In short, AOB's BUBBA® multi-flex interchangeable fillet knife products, market success, and accompanying patent rights are deeply threatened.

20.    To eliminate further infringement, AOB brings this action for patent infringement.

5

## NATURE OF THE ACTION

21.     This action seeks damages and permanent injunctive relief for Defendants' acts of making, using, selling, offering for sale and/or importing their Accused Products that infringe the Asserted Patents.

## THE PARTIES

22.     AOB is a Missouri corporation with its principal place of business at 1800 N. Route Z, Suite A, Columbia, MO 65202.

23.     Upon information and belief, Eposeidon Outdoor Adventure Inc. is a New York corporation with a principal place of business at 425 Oak St. Unit A Garden City, New York 11530.

24.     Upon information and belief, KastKing Fishing Tackle, Inc. is a New York corporation with a regular and established place of business at 1590 E State Hwy 121, Building B910, Lewisville, TX 75056.

## JURISDICTION AND VENUE

25.     This action arises under the United States patent laws, 35 U.S.C. § 101 et seq., including 35 U.S.C. § 271, et seq. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and § 1338(a).

26.     This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants have established minimum contacts with the State of Texas and this judicial district sufficient to satisfy due process. Among other things, Defendants maintain a physical business presence at 1590 E. State Hwy 121, Building B910, Lewisville, TX 75056, which is located within the Eastern District of Texas. This address is publicly listed as Defendants' primary U.S. contact location on every page of Defendants' website, kastking.com, along with the phone number 1-855-830-7430 and a customer service email address. Additionally,

6

Defendants have purposefully directed their business activities toward the State of Texas and this District by, among other things, maintaining an interactive website through which Defendants offer to sell and sell the Accused Products directly to consumers in this District, and by committing acts of patent infringement in this District.

27.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1400(b) because, upon information and belief, Defendants have committed acts of infringement in this District and have a regular and established place of business in this District.  Specifically, Defendants publicly list their business address as 1590 E. State Hwy 121, Building B910, Lewisville, TX 75056, which is within the Eastern District of Texas.  This address appears as Defendants' primary U.S. contact location on every page of Defendants' website, kastking.com, and is accompanied by a listed phone number and customer service email, indicating a regular and established physical presence in this District. Additionally, Defendants have committed infringing acts in this District, including, without limitation, maintaining an interactive website that purposefully provides offers to sell the Accused Products directly to consumers in this District.

<b><u>THE '879 PATENT</u></b>

28.    U.S. Patent Number 12,285,879 (the "'879 Patent") is entitled "Knife Having Removable Blade." The '879 Patent was duly and legally issued on April 29, 2025 by the United States Patent and Trademark Office.

29.    A true and correct copy of the '879 Patent is attached to this Complaint as Exhibit A.

30.    AOB is the owner and assignee of the '879 Patent and possesses all rights of recovery under the '879 Patent.

31.    The '879 Patent has not expired and is in full force and effect.

32.    The '879 Patent claims are valid and enforceable.

7

33.    The Abstract of the '879 Patent states: "A knife comprising a handle and a blade, a tang, and blade assembly connection structure. The handle includes a receiver configured to receive the tang and includes handle connection structure. The blade assembly connection structure and handle connection structure are arranged to releasably lock the blade assembly in an installed position on the handle with the tang in the tang receiver."

## THE '011 PATENT

34.    U.S. Patent Number 12,441,011 (the "'011 Patent") is entitled "Knife Having Removable Blade." The '011 Patent was duly and legally issued on October 14, 2025 by the United States Patent and Trademark Office.

35.    A true and correct copy of the '011 Patent is attached to this Complaint as Exhibit B.

36.    AOB is the owner and assignee of the '011 Patent and possesses all rights of recovery under the '011 Patent.

37.    The '011 Patent has not expired and is in full force and effect.

38.    The '011 Patent claims are valid and enforceable.

39.    The Abstract of the '011 Patent states: "A knife comprising a handle and a blade, a tang, and blade assembly connection structure. The handle includes a receiver configured to receive the tang and includes handle connection structure. The blade assembly connection structure and handle connection structure are arranged to releasably lock the blade assembly in an installed position on the handle with the tang in the tang receiver."

## DEFENDANTS' ACCUSED PRODUCTS

40.    Defendants' Accused Products include 3-Blade and 4-Blade Kits shown and described as:

8





41.    Upon information and belief, Defendants' Accused Products were designed to compete in the market with AOB's BUBBA® multi-flex interchangeable fillet knife products.

42.    Upon information and belief, Defendants' efforts are directly targeted to take market share from AOB. Defendants expressly state, "Eposeidon sold KastKing® fishing tackle

CORE/3510895.0851/241021794.1

products in every US state and over 150 countries." (*See* Defendants' website kastking.com/pages/our-story-view-more). Defendants are promoting the Accused Products to retailers, distributers, and consumers such as "Aliexpress and eBay, as well as to become suppliers to prestigious accounts including but not limited to Walmart.com, Cabela's, Dick's Sporting Goods, and Shimano" (*See* Defendants' website kastking.com/pages/our-story-view-more). Further, Defendants marketing included the Accused Products at multiple industry trade shows, for example, ICAST held in Orlando, Florida. (*See* Defendants' website kastking.com/pages/our-story-view-more). Defendants' Accused Products are aimed at displacing AOB's BUBBA® multi-flex interchangeable fillet knife products in the market in light of the few market participants and niche nature of the market. Any sale by Defendants of the Accused Products likely displaces a sale of AOB's patented product.

## **DEFENDANTS' KNOWLEDGE OF AOB'S PATENT RIGHTS**

43.    Defendants are well aware of AOB's patent rights in the BUBBA® multi-flex interchangeable fillet knife products.

44.    On March 6, 2025, counsel for AOB, Stinson LLP, sent a letter to Eposeidon Outdoor Adventure Inc. (d/b/a KastKing), putting Eposeidon on actual notice under 35 U.S.C. § 154(d)(1)(B) that its KastKing Interchangeable Blade Fillet Knife Kits falls within the scope of claims of U.S. Publication No. 2025/0050517 (the "'517 Application") — including at least claim 23, which the USPTO indicated as allowable —demanding that Eposeidon immediately cease making, using, offering for sale, and selling the Accused Products.

45.    On April 17, 2025, Scott Thomas, Product Development Director at Eposeidon, responded to AOB's March 6, 2025 letter, acknowledging receipt of the letter and requesting an explanation of how the KastKing Interchangeable Blade Fillet Knife Kits infringe claim 23 and any other claims of the '517 Publication. Thus, no later than April 17, 2025, Defendants had actual

10

knowledge of AOB's pending patent application of '517 Publication and the allowable claims therein.

46. On April 29, 2025, AOB sent a second letter to Defendants putting them on notice that the '517 application had issued as the '879 Patent on April 29, 2025. AOB demanded that Defendants immediately cease and desist from any further manufacture, use, import, sale, or offer for sale of the infringing products and advised that it considered any ongoing sales to be willful patent infringement subject to liability for treble damages and attorney fees.

47. On or about May 14, 2025, Defendants, through their patent counsel Zheng Li of Duane Morris & Selvam LLP, responded to AOB's letters of March 6, 2025 and April 29, 2025, asserting that a preliminary analysis showed the KastKing products do not infringe the '879 Patent.

48. On May 22, 2025, Defendants' counsel informed AOB that Defendants intended to sell off their remaining inventory and cease selling the products by the end of the year. Despite this representation, Defendants continued to sell the infringing products for months thereafter.

49. On June 20, 2025, AOB sent a third letter to Defendants, rejecting Defendants' assertion of non-infringement and repeated its cease-and-desist demand.

50. The Parties exchanged further correspondence over the next six months without resolution. Despite Defendants' claims in December 2025 that they had stopped selling the Accused Products, such sales continued on Amazon and eBay.

51. On December 1, 2025, AOB sent a letter to Defendants putting them on notice of the AOB's '011 Patent, asserting that the Accused Products also infringed at least claim 1 of the '011 Patent.

11

52.     Despite receiving ample and repeated notice of AOB's Asserted Patents with detailed information and analysis demonstrating infringement, Defendants continue to sell the Accused Products to date.

## COUNT 1
## INFRINGEMENT OF U.S. PATENT NO. 12,285,879

53.     AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

54.     Defendants, without license or authorization to do so, have infringed one or more claims of the '879 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '879 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

55.     Defendants' Accused Products infringe the '879 Patent. For example, Defendants' Accused Products infringe at least claim 1 of the '879 Patent.

56.     Defendants, without license or authorization to do so, have also indirectly infringed the '879 Patent. Defendants have actively induced infringement of one or more claims of the '879 Patent, and continue to actively induce infringement of one or more claims the '879 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, with knowledge that the induced acts constitute patent infringement, in violation of 35 U.S.C. § 271(b).

57.     The Accused Products assembled and used by third parties infringe the '879 Patent. For example, the Accused Products assembled and used by third parties infringes at least claim 1 of the '879 Patent.

58.     Defendants have induced and are continuing to induce third parties to infringe the '879 Patent, including by selling components of the Accused Products to third parties and by

12

providing training, supporting, teaching, directing, or instruction to third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claim 1 of the '879 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that directly infringes the '879 Patent.

59.    Defendants have induced and are inducing third parties to directly infringe the '879 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claim 1 of the '879 Patent.

60.    Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claim 1 of the '879 Patent by their customers and/or end users that assemble and use the Accused Products.

61.    Upon information and belief, Defendants subjectively believed that there was a high probability that the induced acts infringe and/or took deliberate actions to avoid learning the infringing nature of the induced activities.

62.    Such steps by Defendants to induce third parties' direct infringement include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions, terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

63.    Defendants were objectively aware of, and had knowledge of, the '879 Patent at least as early as March 6, 2025, when AOB sent a copy of Amendment C to the Office Action (taking allowable claims 23 and 24, which were incorporated into the claims that ultimately issued

13

as claims 1–24 of the '879 Patent) to Defendants along with a letter notifying Defendants the Accused Products were infringing.

64.    Defendants have also contributed to the infringement of the '879 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claim 1 of the '879 Patent.

65.    The components of the Accused Products sold by Defendants are material to the claimed multi-flex interchangeable fillet knife products and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

66.    Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling the Accused Products and teaching, instructing, training, guiding, and directing their customers and end users on the assembly and use of the Accused Products. In committing these acts of infringement, Defendants acted despite having knowledge of the '879 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '879 Patent.

67.    Defendants acted with knowledge of the '879 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of the '879 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '879 Patent.

68.    Defendants' infringement of the '879 Patent has been knowing and willful.

14

69.    Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

70.    As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

71.    AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 12,441,011

72.    AOB incorporates by reference the foregoing paragraphs of this Complaint as though fully set forth here.

73.    Defendants, without license or authorization to do so, have infringed one or more claims of the '011 Patent, and continue to infringe, literally or under the doctrine of equivalents, one or more claims the '011 Patent by making, using, selling, offering for sale, and/or importing the Accused Products within the United States, in violation of 35 U.S.C. § 271(a).

74.    Defendants' Accused Products infringe the '011 Patent. For example, Defendants' Accused Products infringe at least claim 1 of the '011 Patent.

75.    Defendants, without license or authorization to do so, have also indirectly infringed the '011 Patent. Defendants have actively induced infringement of one or more claims of the '011 Patent, and continue to actively induce infringement of one or more claims the '011 Patent, by inducing third parties (e.g., customers or end users) to make and use the Accused Products within the United States, with knowledge that the induced acts constitute patent infringement, in violation of 35 U.S.C. § 271(b).

CORE/3510895.0851/241021794.1

76.     The Accused Products assembled and used by third parties infringe the '011 Patent. For example, the Accused Products assembled and used by third parties infringes at least claim 1 of the '011 Patent.

77.     Defendants have induced and are continuing to induce third parties to infringe the '011 Patent, including by selling components of the Accused Products to third parties and providing training, supporting, teaching, directing, or instruction to third parties to assemble and use the Accused Products knowing that such assembly and use of the Accused Products infringes at least claim 1 of the '011 Patent. Defendants sell components of the Accused Products together with instruction materials instructing third parties to assemble and use the Accused Products in a way that directly infringes the '011 Patent.

78.     Defendants have induced and are inducing the third parties to directly infringe the '011 Patent by assembling the Accused Products with specific intent to cause the third parties to assemble and use the Accused Products in a manner that infringes at least claim 1 of the '011 Patent.

79.     Upon information and belief, Defendants possessed specific intent to induce direct infringement of at least claim 1 of the '011 Patent by their customers and/or end users that assemble and use the Accused Products.

80.     Upon information and belief, Defendants subjectively believed that there was a high probability that the induced acts infringe and/or took deliberate actions to avoid learning the infringing nature of the induced activities.

81.     Such steps by Defendants to induce third parties' direct infringement include, among other things, advising, supporting, and directing customers and end users to assemble and use the Accused Products in an infringing manner, and/or distributing and providing instructions,

16

terms of use, training, or advertising, that guide others to assemble and use the Accused Products in an infringing manner.

82.    Defendants were objectively aware of, and had knowledge of, the '011 Patent at least as early as December 1, 2025, when AOB sent a copy of the '011 Patent and analysis demonstrating that the Accused Products infringe at least claim 1 of the '011 Patent (which contains claims 1–30) to Defendants along with a letter notifying Defendants the Accused Products were infringing.

83.    Defendants have also contributed to the infringement of the '011 Patent under 35 U.S.C. § 271(c) by importing, offering to sell, selling, and/or inducing the assembly and use of the Accused Products within the United States knowing that the components of the Accused Products were especially made or adapted for assembly and use in a manner that infringes at least claim 1 of the '011 Patent.

84.    The components of the Accused Products sold by Defendants are material to the claimed multi-flex interchangeable fillet knife products and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

85.    Defendants have committed and continue to commit acts of infringement under 35 U.S.C. § 271 by making using, importing, offering to sell, and/or selling the Accused Products and teaching, instructing, training, guiding, and directing their customers and end users on the assembly and use of the Accused Products. In committing these acts of infringement, Defendants acted despite having knowledge of the '011 Patent and knowledge that their actions constituted infringement of at least one valid and enforceable claim of the '011 Patent.

86.    Defendants acted with knowledge of the '011 Patent and despite an objectively high likelihood that their actions constituted infringement of at least one valid and enforceable claim of

17

the '011 Patent, and Defendants knew or should have known that their actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable claim of the '011 Patent.

87.    Defendants' infringement of the '011 Patent has been knowing and willful.

88.    Defendants' infringement and behavior was egregious in light of the notice AOB provided to Defendants.

89.    As a direct and proximate result of Defendants' acts of infringement, AOB has suffered and continues to suffer damages and irreparable harm.

90.    AOB has no adequate remedy at law for Defendants' acts of infringement and unless Defendants' acts of infringement are enjoined, AOB will continue to be damaged and irreparably harmed.

## JURY DEMAND

AOB hereby requests a trial by jury on all issues properly heard by a jury pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38(b).

## PRAYER FOR RELIEF

AOB respectfully requests that the Court find in its favor and against the Defendants, and that the Court grant AOB the following relief:

A.    A judgment in favor of AOB that Defendants infringed and are infringing one or more claims of the Asserted Patents;

B.    A permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing, inducing the infringement of, or contributing to the infringement of the Asserted Patents, or such other equitable relief the Court determines is warranted;

CORE/3510895.0851/241021794.1

C.      An award to AOB of damages adequate to compensate AOB for the Defendants' acts of infringement together with pre-judgment and post-judgment interest pursuant to 35 U.S.C. § 284;

D.      Trebling the damage award under 35 U.S.C. § 284;

E.      Finding this to be an exceptional case under 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorneys' fees and expenses in this action; and

F.      Any further relief that the Court deems just and proper.


Date: April 1, 2026              Respectfully submitted,

                                    **STINSON LLP**

                                    By:  /s/ *Darlene F. Ghavimi*

19

Darlene F. Ghavimi
TX Bar No. 24072114
2200 Ross Avenue
Suite 2900
Dallas, TX  75201
Telephone: (737) 802-1533
Telefax: (214) 560-2203
Email: darlene.ghavimi@stinson.com

David R. Barnard, #47127MO
1201 Walnut Street, Suite 2900
Kansas City, MO 64106-2150
Telephone: (816) 691-2608
Telefax: (816) 412-1017
Email:  david.barnard@stinson.com
*Pro hac vice to be filed*

Joseph Saleh, #352340CA
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone: (310) 730-7020
Telefax: (310) 730-7058
Email:   joseph.saleh@stinson.com
*Pro hac vice to be filed*

**ATTORNEYS FOR PLAINTIFF
AOB PRODUCTS COMPANY**

CORE/3510895.0851/241021794.1

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 1, 2026, a true and correct copy of the foregoing was filed with the Court's CM/ECF system which will send notification of such filing to all counsel of record.

By: /s/ *Darlene F. Ghavimi*
Darlene F. Ghavimi

CORE/3510895.0851/241021794.1